**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| CLAUDIA GARCIA, | ) | No. CV-F-09-359 OWW/SMS |
| | ) | |
| | ) | MEMORANDUM DECISION AND |
| | ) | ORDER GRANTING IN PART WITH |
| Plaintiff, | ) | LEAVE TO AMEND, GRANTING IN |
| | ) | PART WITHOUT LEAVE TO AMEND, |
| vs. | ) | AND DENYING IN PART |
| | ) | DEFENDANTS' MOTION TO |
| | ) | DISMISS AND TO STRIKE (Doc. |
| CITY OF SANGER, et al., | ) | 9) AND DIRECTING PLAINTIFF |
| | ) | TO FILE FIRST AMENDED |
| | ) | COMPLAINT |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

On November 7, 2008, Plaintiff Claudia Garcia, represented by Juan Falcon, filed a Complaint for Damages in the Fresno County Superior Court against the City of Sanger, the Sanger Police Department, Officer Manuel Chavez, individually and in his official capacity, and Does 1-100. Defendants removed the action to this Court.

Defendants move to dismiss the Complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) and to strike pursuant to Rule 12(f), Federal Rules of

Civil Procedure.

Plaintiff did not file an opposition to the motion as required by Rule 78-230, Local Rules of Practice. Plaintiff's opposition was filed on Thursday, April 30, 2009. Mr. Falcon avers:

> 3. I was engaged in a criminal trial in [sic] from April 10, 2009, through April 17, 2009, in Fresno County Superior Court <u>People v. Casillas</u>.
>
> 4. As a result of my engagement in that criminal trial I was unable to timely file this opposition.
>
> On April 24, 2009, I contacted opposing counsel Lori Mayfield ... to attempt to obtain a continuance of the hearing. However, she informed me her client would not consent to a continuance of the motion.
>
> 6. I ask the Court to accept the late filing of this opposition for its consideration on May 4, 2009.

The Court accepts Mr. Falcon's belated opposition. Mr. Falcon, who has a history in this Court of missing deadlines, is reminded once again of his professional obligation to timely comply with Court orders, the Federal Rules of Civil Procedure, and the Local Rules of Practice. Failure to do so may result in the imposition of sanctions, including the sanction of dismissal.

A. <u>ALLEGATIONS OF COMPLAINT</u>.

The Complaint alleges as follows:

> 10. ... On August 21, 2007, at or about 9:20 p.m. Officer Rodney Jones initiated a stop of Plaintiff's vehicle after she failed to stop at a red light. Upon making contact with Plaintiff, Officer Jones ran a check on Plaintiff's driver's license and discovered a

warrant for Claudia Alice Garcia.  Officer
Jones advised Plaintiff that he was placing
her under arrest for the outstanding bench
warrant.  At this time, Plaintiff GARCIA
advised Officer Jones that she had never been
arrested before and that there must be some
mistake.  At this point, Plaintiff requested
further information as to the charges and
circumstances of the crime she allegedly
committed.  Officer Jones became
confrontational and did not want to discuss
Plaintiff's concerns or answer any of her
questions.  Plaintiff then advised Officer
Jones that her son who plays in the Sanger
High School Band was waiting for her at the
school and that is where she was headed
before she was pulled over.  Officer Jones
contacted Plaintiff's son via his cell phone
and advised him that his mother would not be
picking him up and said that he should find a
ride home.  Plaintiff immediately became
concerned as she did not want her son to walk
home at night due to the violence resulting
from gang wars in the City of Sanger.
Unfortunately, Plaintiff's son was forced to
walk home which is two miles from the school
at 9:30 p.m.  Officer Jones handcuffed
Plaintiff, placed her in the patrol car and
drove to the Sanger Police station.  At the
police station, Plaintiff was placed in a
holding cell.  Plaintiff continued to advise
Officer Jones that she had never been
arrested before and that she did not know why
there would be a bench warrant for her.
Officer Jones continued to ignore her and
processed her for the arrest.  At this time,
Plaintiff suffered a panic attack while in
the custody and control of Defendant SANGER
POLICE DEPARTMENT and Officer Jones.  Because
Plaintiff had never been arrested before and
Officer Jones refused to explain what was
happening and was treating her like a common
criminal, and she was very concerned about
her son's well being as she was not able to
confirm whether he made it home or not,
Plaintiff began to hyperventilate and had an
anxiety attack.  Officer Jones continued to
ignore Plaintiff as she sat in the holding
cell because he believed Plaintiff was
feigning her anxiety attack.  Plaintiff then
begged Officer Jones to summon an ambulance

which Officer Jones reluctantly agreed. A short time later, EMT personnel arrived at the police station. The EMT personnel treated Plaintiff for her anxiety attack and hyperventilation and she was able to calm down. During Plaintiff's ordeal, Officer Jones was rude and disrespectful and treated Plaintiff GARCIA as though she was a common criminal. At around 12:00 midnight, Officer Jones finally released Plaintiff and made her walk back to her vehicle which was still parked on the street where she was pulled over. Officer Jones did not offer to give her a ride back to her vehicle. After this ordeal, Plaintiff conducted her own investigation as she did not know why there would be a bench warrant for her arrest involving Penal Code Section 242. Plaintiff was able to obtain a report that was authored by Defendant CHAVEZ regarding an altercation that occurred at Pitman Farms, in Sanger, California. Plaintiff contacted Pitman Farms to inquire about the altercation and representatives from Pitman Farms informed Plaintiff that the suspect was a former employee and her name was Adelina C. Garcia De Lima. They also advised Plaintiff that an officer from the SANGER POLICE DEPARTMENT also went to Pitman Farms after Plaintiff was arrested and confirmed that Claudia Alina Garcia never worked at Pitman Farms and was not the suspect involved altercation [sic]. Pitman Farms provided the officer with a copy of Adelina C. Garcia De Lima's driver's license and social security which proved that it was not Claudia Alina Garcia. During the initial investigation regarding the altercation, Defendant CHAVEZ was negligent in his investigation and authored Sanger Police Report No. 060002849 identifying Plaintiff as the suspect. After the Plaintiff realized what had occurred, she filed a complaint against Defendant CHAVEZ for his negligent investigation regarding the altercation at Pitman Farms. Plaintiff received a response from Tomas Klose, Chief of Police for the City of Sanger ... Essentially, the Chief of Police found that Defendant CHAVEZ was negligent in the performance of his duties per Sanger Police Department Policy and Procedures.

4

> Unfortunately, it was still necessary for Plaintiff to hire an attorney in order to defend the assault case for which Plaintiff was not the correct suspect. After three court appearances, the District Attorney ultimately dismissed the case against Plaintiff as it was determined she was not the individual involved in the altercation at Pitman Farms. Plaintiff did not understand how she could be wrongfully accused of violated [sic] Penal Code Section 242 as she had never worked at Pitman Farms. Also, according to Pitman Farms, the suspect involved in the altercation was named was [sic] Adelina C. Garcia De Lima who lived at 1187 Mulberry Avenue, Reedley, California. Plaintiff did not understand how Defendant CHAVEZ could have identified her as the suspect and filed report 060002849 with her name, date of birth and social security number.

The Complaint alleges that Plaintiff filed a claim against the City of Sanger, which was rejected on May 8, 2008.

The First Cause of Action is for violation of 42 U.S.C. § 1983 and alleges that Defendants "without legal justification, willfully, maliciously, and intentionally illegally arrested Plaintiff ... by, including but not limited to, unlawfully detaining and arresting Plaintiff," thereby violating the Fourth and Fourteenth Amendments, and her rights under California Civil Code §§ 43, 51.7, and 52.1 "to be secured in her person, to be free from the use of unjustified force, to be free from summary punishment without due process, and to equal protection of the laws." The First Cause of Action alleges Defendant Sanger Police Department and the supervisory officer or agents of the City of Sanger are liable "for the acts of the aforementioned CITY OF SANGER police officers, because they repeatedly, knowingly and

5

with deliberate indifference failed to enforce the laws of the State of California and the regulations of the CITY OF SANGER police department pertaining to the proper identification and arrest of persons." The First Cause of Action alleges that Defendants Chavez, City of Sanger, and the Sanger Police Department "conspired with one another and/or allowed their respective employees to enter into an agreement between two more persons [sic] with the intent to agree or conspire and the intent to commit wrongful acts namely [sic] violations of the Fourth Amendment to the United States Constitution, Article One, Sections One and Seven of the California Constitution, and California Civil Code sections § 43 and § 52.1 [sic]." The First Cause of Action alleges that the actions alleged subjects Defendants Chavez, City of Sanger, and Sanger Police Department to liability under California Government Code § 815.2.

The Second Cause of Action is for false arrest and false imprisonment because Defendants "arrested or caused to be arrested Plaintiff ... and said arrest was without a warrant, without probable cause and without any legal justification" in violation of the Fourth Amendment and to be free from a deprivation of liberty under the Fourteenth Amendment to the United States Constitution, Articles One and Seven of the California Constitution, and California Civil Code §§ 43 and 52.1. The Second Cause of Action repeats the conspiracy allegations alleged in the First Cause of Action.

The Third Cause of Action is for interference with civil

rights in violation of the Tom Banes Civil Rights Act, California Civil Code §§ 43, 51 and 52.1, and alleges that Defendants' actions deprived Plaintiff of liberty and substantive and procedural due process.

The Fourth Cause of Action is for intentional infliction of emotional distress.

The Fifth Cause of Action is for negligence per se.

The Sixth Cause of Action is for negligent infliction of emotional distress.

The Seventh Cause of Action is for negligence.[1]

B. **MOTION TO DISMISS**.

    1. **GOVERNING STANDARDS**.

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint. *Novarro v. Black*, 250 F.3d 729, 732 (9th Cir.2001). "A district court should grant a motion to dismiss if plaintiffs have not pled 'enough facts to state a claim to relief that is plausible on its face.'" *Williams ex rel. Tabiu v. Gerber Products Co.,* 523 F.3d 934, 938 (9th Cir.2008), quoting *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544, 127 S.Ct. 1955, 1974 (2007). "'Factual allegations must be enough to raise a right to relief above the speculative level.'" *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not

---

[1] In the section of the Complaint captioned "Jurisdiction," it is alleged that this "action is brought pursuant to 42 U.S.C. § 1981, § 1983, § 1985, [and] § 1986 ...." However, no claims for violation of Sections 1981, 1985 or 1986 are alleged in the Complaint.

need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic*, *id.* at 1964-1965. Dismissal of a claim under Rule 12(b)(6) is appropriate only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Dismissal is warranted under Rule 12(b)(6) where complaint lacks a cognizable legal theory or where the complaint presents a cognizable legal theory yet fails to plead essential facts under that theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir.1984). In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe all inferences from them in the light most favorable to the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir.2002). However, legal conclusions need not be taken as true merely because they are cast in the form of factual allegations. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir.2003). Immunities and other affirmative defenses may be upheld on a motion to dismiss only when they are established on the face of the complaint. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir.1999); *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980) When ruling on a motion to dismiss, the court may consider the facts alleged in the complaint, documents attached to the complaint, documents

relied upon but not attached to the complaint when authenticity is not contested, and matters of which the court takes judicial notice. *Parrino v. FHP, Inc*, 146 F.3d 699, 705-706 (9th Cir.1988).

2. <u>FIRST CAUSE OF ACTION FOR VIOLATION OF SECTION 1983</u>.

a. *Monell* <u>Liability.</u>

Defendants move to dismiss the First Cause of Action to the extent it is based on Section 1983 because the Complaint fails to allege liability of the City of Sanger under *Monell*.

Local government entities and local government officials acting in their official capacity can be sued for monetary, declaratory, or injunctive relief, but only if the allegedly unconstitutional actions took place pursuant to some "policy statement, ordinance, or decision officially adopted and promulgated by that body's officers...." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). Alternatively, if no formal policy exists, plaintiffs may point to "customs and usages" of the local government entity. *Id*. A local government entity cannot be held liable simply because it *employs* someone who has acted unlawfully. *Id*. at 694. *See also Haugen,* 351 F.3d at 393 ("Municipalities cannot be held liable under a traditional respondeat superior theory. Rather, they may be held liable only when "action pursuant to official municipal policy of some nature caused a constitutional tort.... [T]o establish municipal liability, a plaintiff must prove the existence of an

unconstitutional municipal policy."). It is well established in the Ninth Circuit that an allegation based on nothing more than a bare averment that the official's conduct conformed to official policy, custom or practice suffices to state a *Monell* claim under Section 1983. *See Karim Panahi v. L.A. Police Dept.*, 839 F.2d 621, 624 (9th Cir. 1988); *Shah v. County of L.A.*, 797 F.2d 743, 747 (9th Cir. 1986); *Guillory v. County of Orange*, 731 F.2d 1379, 1382 (9th Cir. 1984).

Here, there are no allegations in the Complaint from which liability of the City of Sanger under *Monell* may be inferred. Defendants' motion to dismiss on this ground is GRANTED WITH LEAVE TO AMEND.

> b. <u>Due Process Cannot Be Negligently Violated</u>.

Defendants move to dismiss the First Cause of Action to the extent that the First Cause of Action alleges that Defendants violated her federal constitutional rights "to be secured in her person, to be free from the use of unjustified force, to be free from summary punishment without due process, and to equal protection of the laws." Defendants contend that "Plaintiff does not plead any facts specific to a violation of due process, nor does she have a separate cause of action based on violation of due process, therefore it is unclear if plaintiff is alleging a specific allegations that her due process rights were violated."

Although not argued by Defendants, Plaintiff cannot allege a violation of the Fourteenth Amendment's substantive due process clause based on her allegedly unlawful arrest. "Where a

10

particular amendment 'provides an explicit textual source of constitutional protection' against a particular source of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994)(quoting *Graham v. Connor,* 490 U.S. 386, 395 (1989).]

Defendants argue that due process cannot be violated negligently. Defendants cite *Daniels v. Williams*, 474 U.S. 327, 328 (1986): "We conclude that the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property." In *Daniels*, a prisoner sued under Section 1983 for violation of due process when he slipped on a pillowcase left on a stairway by a guard. In *Davidson v. Cannon*, 474 U.S. 344, 347 (1986), a case where a prisoner brought a section 1983 action against prison officials for injuries he suffered when officials allegedly failed to protect him from another inmate, the Supreme Court ruled:

> Respondents' lack of due care in this case led to serious injury, but that lack of care simply does not approach the sort of abusive government conduct that the Due Process Clause was designed to prevent ... Far from abusing governmental power, or employing it as an instrument of oppression, respondent Cannon mistakenly believed that the situation was not particularly serious, and respondent James simply forgot about the note. The guarantee of due process has never been understood to mean that the State must guarantee due care on the part of its officials.

Defendants also cite *County of Sacramento v. Lewis*, 523 U.S. 833 (1998). In *Lewis*, the estate and parents of Phillip Lewis, a suspect killed in a high speed police chase, brought an action alleging a deprivation of Phillip's Fourteenth Amendment substantive due process right to life. The Supreme Court emphasized:

> '[t]he touchstone of due process if protection of the individual against arbitrary action of government,' ... whether the fault lies in a denial of fundamental procedural fairness, ... or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective ....

523 U.S. at 845-846. In discussing the standard of shocking the conscience in order to state a claim for violation of substantive due process, the Supreme Court stated:

> [T]he constitutional concept of conscience shocking duplicates no traditional category of common-law fault, but rather points clearly away from liability, or clearly towards it, only at the ends of the tort law's spectrum of culpability. Thus, we have made it clear that the due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm ... We have accordingly rejected the lowest common denominator of customary tort liability as any mark of sufficiently shocking conduct, and have held that the Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically below the threshold of constitutional due process ... It is, on the contrary, behavior at the other end of the culpability spectrum that would most probably support a due process claim; conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to

12

rise to the conscience-shocking level ....

Whether the point of the conscience shocking
is reached when injuries are produced with
culpability falling within  the middle range,
following from something more than negligence
but 'less than intentional conduct, such as
recklessness or "gross negligence,"' ... is a
matter for closer calls ....

...

Rules of due process are not, however,
subject to mechanical application in
unfamiliar territory.  Deliberate
indifference that shocks in one environment
may not be so patently egregious in another,
and our concern with preserving the
constitutional proportions of substantive due
process demands an exact analysis of
circumstances before any abuse of power is
condemned as conscience shocking. ....

[A]ttention to the markedly different
circumstances of normal pretrial custody and
high-speed law enforcement chases shows why
the deliberate indifference that shocks in
one case is less egregious in the other (even
assuming that it makes sense to speak of
indifference as deliberate in the case of
sudden pursuit).  As the very term
'deliberate indifference' implies, the
standard is sensibly employed only when
actual deliberation is practical, ... and in
the custodial situation of a prison,
forethought about an inmate's welfare is not
only feasible but obligatory under a regime
that incapacitates a prisoner to exercise
ordinary responsibility for his own welfare.

...

But just as the description of the custodial
prison situation shows how deliberate
indifference can rise to a constitutionally
shocking level, so too does it suggest why
indifference may well not be enough for
liability in the different circumstances of a
case like this one.  We have, indeed, found
that deliberate indifference does not suffice
for constitutional liability (albeit under

the Eighth Amendment) even in prison circumstances when a prisoner's claim arises not from normal custody but from response to a violent disturbance ....

Like prison officials facing a riot, the police on an occasion calling for fast action have obligations that tend to tug against each other. Their duty is to restore and maintain lawful order, while not exacerbating disorder more than necessary to do their jobs. They are supposed to act decisively and to show restraint at the same moment, and their decisions have to be made 'in haste, under pressure, and frequently without the luxury of a second chance.' ... A police officer deciding whether to give chase must balance on the one hand the need to stop a suspect and show that flight from the law is no way to freedom, and, on the other, the high-speed threat to all those within stopping range, be they suspects, their passengers, other drivers, or bystanders.

To recognize a substantive due process violation in these circumstances when only midlevel fault has been shown would be to forget that liability for deliberate indifference to inmate welfare rests upon the luxury enjoyed by prison officials of having time to make unhurried judgments, upon the chance for repeated reflection, largely uncomplicated by the pulls of competing obligations. When such extended opportunities to do better are teamed with protracted failure even to care, indifference is truly shocking. But when unforseen circumstances demand an officer's instant judgment, even precipitate recklessness fails to inch close enough to harmful purpose to spark that shock that implicates 'the large concerns of the governors and the governed.' ... Just as a purpose to cause harm is needed for an Eighth Amendment liability in a riot case, so it ought to be needed for due process liability in a pursuit case. Accordingly, we hold that high-speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment redressible by an action under § 1983.

14

523 U.S. at 848-854.

Plaintiff's opposition merely "submits her allegations of a violation of due process are appropriate." Plaintiff's conclusory response begs the question before the Court, i.e., whether an arrest based on an arrest warrant in turn based on mistaken identity shocks the conscience to the point where a violation of substantive due process is alleged.

Defendants' motion to dismiss is GRANTED WITH LEAVE TO AMEND.[2]

### c. Qualified Immunity.[3]

Defendants move to dismiss the First Cause of Action against Defendant Chavez on the ground that he is entitled to qualified immunity from liability for damages under Section 1983.

Defendants characterize the allegations against Defendant Chavez as alleging that "her civil rights were violated due to OFFICER CHAVEZ' investigation and his allegedly naming the wrong suspect on his arrest report, which resulted in the warrant being issued."

Qualified immunity serves to shield government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In *Pearson v. Callahan*,

---

[2]Plaintiff's counsel is reminded of his obligations under Rule 11, Federal Rules of Civil Procedure, and 28 U.S.C. § 1927.

[3]Defendants argue that Officer Rodney Jones is entitled to qualified immunity. However, Officer Jones is not named as a defendant in this action.

___ U.S. ___, 129 S. Ct. 808 (2009), the Supreme Court summarized the purpose of qualified immunity:

> Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Groh v. Ramirez*, 540 U.S. 551 (2004) (Kennedy, J., dissenting) (citing *Butz v. Economou*, 438 U.S. 478, 507 (1978) (noting that qualified immunity covers "mere mistakes in judgment, whether the mistake is one of fact or one of law")).

> Because qualified immunity is "an immunity from suit rather than a mere defense to liability ... it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis deleted). Indeed, we have made clear that the "driving force" behind creation of the qualified immunity doctrine was a desire to ensure that "'insubstantial claims' against government officials [will] be resolved prior to discovery." *Anderson v. Creighton*, 483 U.S. 635, 640, n. 2 (1987). Accordingly, "we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Hunter v. Bryant, 502 U.S. 224, 227 (1991) (per curiam).

Deciding qualified immunity normally entails a two-step analysis. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). First, "taken in the light most favorable to the party asserting the injury, do the facts alleged show the officers' conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201

16

(2001).  If the court determines that the conduct did not violate a constitutional right, the inquiry is over and the officer is entitled to qualified immunity.  However, if the court determines that the conduct did violate a constitutional right, *Saucier*'s second prong requires the court to determine whether, at the time of the violation, the constitutional right was "clearly established."  *Id*.  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Id*. at 202.  This inquiry is wholly objective and is undertaken in light of the specific factual circumstances of the case.  *Id*. at 201.  Even if the violated right is clearly established, *Saucier* recognized that, in certain situations, it may be difficult for a police officer to determine how to apply the relevant legal doctrine to the particular circumstances he faces.  If an officer makes a mistake in applying the relevant legal doctrine, he is not precluded from claiming qualified immunity so long as the mistake is reasonable.  If "the officer's mistake as to what the law requires is reasonable, ... the officer is entitled to the immunity defense."  *Id*. at 205.  In *Pearson*, the Supreme Court ruled that "while the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory."  *Pearson, id*. at 818.  "The judges of the district courts and the courts of appeal should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified

17

immority analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* In *Brosseau v. Haugan*, 543 U.S. 194 (2004), the Supreme Court reiterated:

> Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted. *Saucier v. Katz*, 533 U.S., at 206 (qualified immunity operates 'to protect officers from the sometimes "hazy border between excessive and acceptable force"'). Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct. If the law at that time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation.
>
> It is important to emphasize that this inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.' *Id.*, at 201. As we previously said in this very context:
>
> > '[T]here is no doubt that *Graham v. Connor, supra*, clearly establishes the general proposition that use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness. Yet, that is not enough. Rather, we emphasized in *Anderson* [*v. Creighton*] "that the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right.' ... The relevant, dispositive inquiry in determining whether a right is clearly established is whether it

18

would be clear to a reasonable
        officer that his conduct was
        unlawful in the situation he
        confronted.'  ...

        The Court of Appeals acknowledged this
        statement of law, but then proceeded to find
        fair warning in the general tests set out in
        *Graham* and *Garner* ... In so doing, it was
        mistaken.  *Graham* and *Garner,* following the
        lead of the Fourth Amendment's text, are cast
        at a high level of generality.  See *Graham v.
        Connor*, *supra*, at 396 ('"[T]he test of
        reasonableness under the Fourth Amendment is
        not capable of precise definition or
        mechanical application"').  Of course, in an
        obvious case, these standards can 'clearly
        establish' the answer, even without a body of
        relevant case law.'

543 U.S. at 198-199.  However, as explained in *Wilkins v. City of
Oakland*, 350 F.3d 949, 956 (9th Cir.2003), *cert. denied sub nom.
Scarrot v. Wilkins*, 543 U.S. 811 (2004):

        Where the officers' entitlement to qualified
        immunity depends on the resolution of
        disputed issues of fact in their favor, and
        against the non-moving party, summary
        judgment is not appropriate.  *See Saucier*,
        533 U.S. at 216 ... (Ginsberg, J.,
        concurring)('Of course, if an excessive force
        claim turns on which of two conflicting
        stories best captures what happened on the
        street, *Graham* will not permit summary
        judgment in favor of the defendant
        official.').

    Defendants cite *Hervey v. Estes*, 65 F.3d 784, 789 (9th
Cir.1995):

        In sum, a plaintiff can survive summary
        judgment on a defense claim of qualified
        immunity if the plaintiff can *both* establish
        a substantial showing of a deliberate
        falsehood or reckless disregard and establish
        that, without the dishonestly included or
        omitted information, the magistrate would not
        have issued the warrant.  Put another way,

                        19

> the plaintiff must establish that the
> remaining information in the affidavit is
> insufficient to establish probable cause.
> The showing necessary to get to a jury in a
> section 1983 action is the same as the
> showing necessary to get an evidentiary
> hearing under *Franks*.

Defendants also rely on *Hervey* as holding that the Ninth Circuit requires a heightened pleading standard, requiring Plaintiff to plead facts from which it may be inferred that Defendant Chavez deliberately, knowingly, or recklessly misled the magistrate and complain that the Complaint does not satisfy this standard.

However, the Ninth Circuit has ruled that heightened pleading of improper motive in constitutional tort cases is no longer required. *Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). The Ninth Circuit did so because of Supreme Court decisions in *Crawford-El v. Britton*, 523 U.S. 574 (1998), which held that appellate courts should not establish heightened pleading or proof requirements regarding improper motive in constitutional tort cases brought against individual defendants in the absence of an amendment of the Federal Rules of Civil Procedure or statute, and in *Sweirkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002), which rejected the use of heightened pleading in Title VII cases to weed out unmeritorious cases, stating that "complaints in these cases, as in most others, must satisfy only the simple requirements of Rule 8(a)." 534 U.S. at 998.

Plaintiff argues that there is no evidence from which it may

20

be inferred that Defendant Chavez acted reasonably and constitutionally under the circumstances and that qualified immunity resolution should be deferred until the Court can make a factual determination of the circumstances at summary judgment. Plaintiff contends that she has alleged sufficient facts to avoid dismissal without discovery but seeks leave to amend should the Court not agree.

Defendants' motion to dismiss on the ground of qualified immunity is DENIED. Discovery is needed to ascertain the facts; qualified immunity shall be determined at summary judgment or trial.

### d. <u>Conspiracy to Violate Civil Rights</u>.

Defendants move to dismiss the allegation in Paragraph 26 of the First Cause of Action that Defendants conspired to violate her civil right on the ground that Plaintiff pleads no facts from which such a conspiracy may be inferred.

"To establish a conspiracy, a plaintiff must demonstrate the existence of an agreement or 'meeting of the minds' to violate constitutional rights." *Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1301 (9th Cir.1999). "The defendants must have, by some concerted action, intended to accomplish some unlawful objective for the purpose of harming another which results in damage." *Id.* This agreement or meeting of the minds may be inferred on the basis of circumstantial evidence, such as the actions of the defendants. *Id.* A showing that defendants committed acts that 'are unlikely to have been undertaken without

an agreement' may support the inference of a conspiracy. *Id.* Conclusory allegations of conspiracy, however, are not enough to support a Section 1983 conspiracy claim. A plaintiff must allege specific facts to support the existence of the claimed conspiracy. *See Olsen v. Idaho Bd. of Medicine,* 363 F.3d 916, 929 (9th Cir.2004). Allegations that identify "the period of the conspiracy, the object of the conspiracy, and certain other actions of the alleged conspirators taken to achieve that purpose," *Marchese v. Umstead*, 110 F.Supp.2d 361, 371 (E.D.Pa.2000), and allegations that identify "which defendants conspired, how they conspired and how the conspiracy led to a deprivation of his constitutional rights," *Harris v. Roderick*, 126 F.2d 1189, 1196 (9th Cir.1997), have been held to be sufficiently particular to properly allege a conspiracy.

Defendants also complain that Plaintiff's allegations of a conspiracy to violate civil rights are not stated in a separate cause of action.

Plaintiff responds that she "is not asserting a cause of action for violation of civil rights [sic]" and that "she has pled facts that she believes are true."

Plaintiff's response is unintelligible. The First Cause of Action specifically alleges that "Defendants Chavez, City of Sanger, and the Sanger Police Department "conspired with one another and/or allowed their respective employees to enter into an agreement between two more persons [sic] with the intent to agree or conspire and the intent to commit wrongful acts namely

[sic] violations of the Fourth Amendment to the United States Constitution, Article One, Sections One and Seven of the California Constitution, and California Civil Code sections § 43 and § 52.1 [sic]."

If Plaintiff intends to allege a claim against Defendants based on conspiracy to violate Plaintiff's constitutional rights, Plaintiff must comply with the pleading standards set forth above. Defendants' motion to dismiss on this ground is GRANTED WITH LEAVE TO AMEND.

3. <u>SECOND CAUSE OF ACTION FOR FALSE ARREST AND FALSE IMPRISONMENT</u>.

Defendants move to dismiss the Second Cause of Action for false arrest and false imprisonment.

Defendants cite California Civil Code § 43.55:

> (a) There shall be no liability on the part of, and no cause of action shall arise against, any peace officer who makes an arrest pursuant to a warrant of arrest regular upon its face if the peace officer making the arrest acts without malice and in the reasonable belief that the person arrested is the one referred to in the warrant.

> (b) As used in this section, a 'warrant of arrest regular upon its face' includes both of the following:

> (1) A paper arrest warrant that has been issued pursuant to a judicial order.

> (2) A judicial order that is entered into an automated warrant system by law enforcement or court personnel authorized to make those entries at or near the time the judicial order is made.

23

Defendants cite *Collins v. City and County of San Francisco*, 50 Cal.App.3d 671 (1975). *Collins* involved an action for damages against the city for a false arrest allegedly made by a city policeman. Summary judgment for the city was entered and the Court of Appeal affirmed. The Court of Appeal quoted *Vallindras v. Massachusetts, Bonding & Ins. Co.*, 42 Cal.2d 149, 154 (1954):

> 'It is [the officer's] duty to execute the orders of the court unless they are patently irregular and void. In determining whether process and orders are "regular on their face" so far as the liability of such an officer is concerned, the following statement from *Aetna Ins. Co. v. Blumenthal* (1943), 129 Conn. 545, 553 ... is pertinent: "When we speak of process 'valid on its face,' in considering whether it is sufficient to protect an officer, we do not mean that its validity is to be determined upon the basis of scrutiny by a trained legal mind; nor is it to be judged in the light of facts outside its provisions which the officer may know ... Unless there is a clear absence of jurisdiction on the part of the court or magistrate issuing the process, it is sufficient if upon its face it appears to be valid in the judgment of an ordinarily intelligent and informed layman. To hold otherwise would mean that an officer must act at his peril or delay unless he has had an opportunity to search out legal niceties of procedure and, as said in *Anderson v. Dewey* [(1917), 91 Conn. 510, 514 ...], 'A result subjecting him to constant danger of liability would be an intolerable hardship to him, and inevitably detract from the prompt and efficient performance of his public duty.'" ...

The *Collins* Court concluded:

> The evidence before the superior court could do no more than establish that Officer Brady was guilty, with malice, of the 'groundless institution of criminal proceedings.' Adopting the language of Professor Prosser:

24

> *'He is therefore liable, if at all, only for*
> *a misuse of legal process to effect a valid*
> *arrest for an improper purpose. The action*
> *must be for malicious prosecution, ...'* ....

50 Cal.App.3d at 677-678. *See also Scannell v. County of*

*Riverside,* 152 Cal.App.3d 596, 607-608 (1984).

Defendants argue that Plaintiff alleges that Defendant

Chavez is liable for false arrest and imprisonment because there

was no warrant for her arrest:

> However that is not correct. Plaintiff also
> states in her complaint that a warrant did
> not issue for her name, wrongfully so.
> Therefore, when plaintiff was arrested, it
> was under the 'due forms of law' and 'color
> of legal authority.' Since the arrest was
> done through the legally proper means, there
> was no false arrest or false imprisonment.
> Plaintiff may argue that there was malicious
> prosecution because the warrant was not
> intended to issue for her, yet she was
> prosecuted, but there is no false arrest.

However, Defendants contend, Defendant Chavez cannot be sued

for malicious prosecution because he has immunity from liability

pursuant to California Government Code § 821.6:

> A public employee is not liable for injury
> caused by his instituting or prosecuting any
> judicial or administrative proceeding within
> the scope of his employment, even if he acts
> maliciously and without probable cause.

Because Defendant Chavez cannot be sued for malicious

prosecution, Defendants City of Sanger and the Sanger Police

Department are immune as well pursuant to California Government

Code § 815.2(b):

> (b) Except as otherwise provided by statute,
> a public entity is not liable for an injury
> resulting from an act or omission of an

25

employee of the public entity where the
                    employee is immune from liability.

     The Second Cause of Action is not based on the common law

torts of false arrest or false imprisonment, but is grounded upon

the United States and California Constitutions as well as the

California Civil Code.  Further, Defendant Chavez did not arrest

Plaintiff; Officer James did.  Defendant Chavez's liability is

premised on his incorrectly naming Plaintiff in the application

for the arrest warrant.

     In any event, Plaintiff requests leave to amend to allege

that the arrest was made with malice knowing that the person

arrested was not the one identified in the warrant.  From this

request, it appears that Plaintiff intends to name the arresting

officer as a defendant.

     Because it cannot be determined that Plaintiff cannot state

a claim upon which relief can be granted, Defendants' motion to

dismiss is GRANTED WITH LEAVE TO AMEND.

          4.   THIRD CAUSE OF ACTION FOR VIOLATION OF THE TOM

BANES CIVIL RIGHTS ACT.

     Defendants move to dismiss the Third Cause of Action for

interference with civil rights in violation of the Tom Banes

Civil Rights Act, California Civil Code §§ 42, 51, and 52.1.

     California Civil Code § 43 provides:

                    Besides the personal rights mentioned or
                    recognized in the Government Code, every
                    person has, subject to the qualifications and
                    restrictions provided by law, the right of
                    protection from bodily restraint or harm,
                    from personal insult, from defamation, and

                                   26

from injury to his personal relations.

Defendants argue that Section 43 is simply a declaration of rights and does not impose a duty to act.

California Government Code § 815.6 provides:

> [w]here a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge that duty.

Defendants cite *Clausing v. San Francisco Unified School Dist.,* 221 Cal.App.3d 1224, 1239 (1990), in support of their contention. Although there is no discussion of Section 43 in *Clausing*, the Court of Appeal explained:

> In order for Government Code section 815.6 to be applicable, the enactment relied upon must impose a *mandatory* duty, not a discretionary duty; neither must the enactment simply set forth a prohibition or a right, as opposed to an affirmative duty on the part of a government agency to perform some act ... In every case, '[t]he controlling question is whether the enactment at issue was intended to impose an obligatory duty to take specified official action to prevent particular foreseeable injuries, thereby providing an appropriate basis for civil liability ...' ... The question of whether an enactment is intended to impose a mandatory duty on a public entity to protect against a particular kind of injury is a question of law.

221 Cal.App.3d at 1239. [OWW - Although not cited by Defendants, in an unreported decision, *Nesby v. City and County of San Francisco*, 2009 WL 414605 at *9 (2009), ruled:

27

> We also reject plaintiff's assertion for the
> first time on appeal that a mandatory duty
> arises under Civil Code section 43, which
> provides a right of protection from bodily
> restraint or harm.  The '"question is whether
> the enactment ... was intended to impose an
> obligatory duty to take specified official
> action to prevent particular foreseeable
> injuries ..."' (*Clausing v. San Francisco
> Unified School Dist.* (1990) 221 Cal.App.3d
> 1224, 1239 ... Section 43 is simply a
> declaration of rights; it does not impose an
> affirmative duty to act.  (See *Clausing,
> supra*, 221 Cal.App.3d at pp. 1239-1241 ...
> The authority on which plaintiff relies does
> not establish a mandatory duty under section
> 43 or even consider this issue.  (See *Jones
> v. Kmart Corp.* (1998) 17 Cal.4th 329, 338
> ....

Defendants' motion to dismiss the Third Cause of Action is GRANTED WITH PREJUDICE to the extent Plaintiff purports to state a claim for relief based on Civil Code § 43.

California Civil Code § 51, known as the Unruh Civil Rights Act, provides:

> (b) All person within the jurisdiction of
> this state are free and equal, and no matter
> what their sex, race, color, religion,
> ancestry, national origin, disability,
> medical condition, marital status, or sexual
> orientation are entitled to the full and
> equal accommodations, advantages, facilities,
> privileges, or services in all business
> establishments of every kind whatsoever.

Defendants move to dismiss Plaintiff's claim for violation of Section 51 because no facts are alleged that come within the scope of the statute.

Plaintiff responds that she does not seek liability under "Business and Professions Code section 51 [sic]."  However, Civil Code § 51 is alleged as a basis for liability in the Third

28

Cause of Action.  Defendants' motion to dismiss the Third Cause of Action to the extent it is based on Civil Code § 51 is GRANTED WITH PREJUDICE.

California Civil Code § 52.1(b) provides that "[a]ny individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of this state, has been interfered with, or attempted to be interfered with, as described in subdivision (b), may institute and prosecute ... a civil action for damages, including, but not limited to, damages under Section 52, injunctive relief, and other appropriate equitable relief to protect the peaceable exercise or enjoyment of the right or rights secured."  Section 52.1(a) provides for an action by the Attorney General, district attorney or city attorney "[i]f a person or persons, whether or not acting under color of law, interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual ... of rights secured by the Constitution or laws of the United States, or the rights secured by the Constitution or laws of this state ...."

Defendants argue for dismissal of the Third Cause of Action based on Section 52.1 against Defendant Chavez because there are no allegations that Defendant Chavez threatened, intimidated or coerced Plaintiff.

Defendants argue that *Venegas v. County of Los Angeles*, 32 Cal.4th 820 (2004) is distinguishable.

In *Venegas*, the Task Force for Regional Auto Theft
Prevention (TRAP) was an interagency task force run by the
Sheriff's Department to facilitate theft investigations involving
multiple jurisdictions.  Wiles, a police officer for the City of
Vernon and a TRAP member, was investigating plaintiff David
Venegas's brother, Ricardo, who was believed to be involved in an
automobile theft ring.  Wiles and other TRAP officers pursued a
car driven by Beatriz Venegas, accompanied by her husband David.
TRAP officers, noting a resemblance between David and Ricardo,
stopped the car and learned by David was Ricardo's brother.
David argued with the officers and they handcuffed him and
detained Beatriz.  Wiles questioned David about his car, which
had no license plate or vehicle identification number.  David
told Wiles he had just brought the car and it was a salvaged
vehicle.  The officers impounded the car to determine if it was
stolen.

When asked for identification, David told the officers that
it was at his home nearby.  David refused to sign an entry and
search waiver form to allow the officers to pick up his
identification, but he gave verbal consent to the officers to
accompany Beatriz to their home for that purpose.  Wiles assured
the couple that their home would not be searched.

TRAP officers took Beatriz home and had her sign a written
entry and search waiver form granting "full and unconditional
authority" to the officers to enter and conduct a search for
identification and "any related investigation in any related

criminal or non-criminal law enforcement matter." The officers accompanied her inside her home. While she was retrieving David's identification card, the officers searched the entire home and found papers indicating that David was on felony probation. On learning this, Wiles directed the officers to arrest David for violating California Vehicle Code § 10751(a), a misdemeanor, and for also violating his probation. Police officers eventually booked David into custody. They detained Beatriz for two hours but did not charge her with any offense. The next day, after determining that the car was probably not stolen, Wiles directed that David be released from custody, but he was not released for another two days. No charges were filed against him.

David and Beatriz Venegas filed an action against Wiles, the City of Vernon, the Vernon Police Department, and the County and its sheriff's department, sheriff and deputies, alleging causes of action under Section 1983 and California Civil Code § 52.1(b) for unreasonable search and seizure. 32 Cal.4th at 827-828. The California Supreme Court ruled:

> All we decide here is that, in pursuing relief for those constitutional violations under section 52.1, plaintiffs need not allege that defendants acted with discriminatory animus or intent, so long as those acts were accompanied by the requisite threats, intimidation, or coercion. The Court of Appeal was correct in holding that plaintiffs adequately stated a cause of action under section 52.1.

32 Cal.4th at 707-708.

Defendants argue that *Venegas* is distinguishable because Defendant Chavez was not present at Plaintiff's arrest or incarceration and did not participate in those actions and therefore, did not threaten, intimidate or coerce Plaintiff. *See also City and County of San Francisco v. Ballard*, 136 Cal.App.4th 381, 408 (2006):

> **Ballard has not alleged and the record does not establish any conduct that rises to the level of a threat of violence or coercion. Not only did city not interfere with any legal right as explained above, but Ballard has completely failed to satisfy the requirement that city engaged in a form of coercion.**

Plaintiff asserts that she has incorporated by reference the relevant portions of the Complaint to allege liability under Civil Code § 52.1 and requests leave to allege with more particularity facts to establish liability of the Defendants under this cause of action.

Defendants' motion to dismiss the Third Cause of Action is GRANTED WITH LEAVE TO AMEND to the extent that the Third Cause of Action is based on Civil Code § 52.1.

5. <u>FOURTH AND SIXTH CAUSES OF ACTION FOR INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS</u>.

Defendants move to dismiss the Fourth and Sixth Causes of Action for intentional and negligent infliction of emotional distress, respectively. Defendants rely on their argument *supra* that the arrest warrant was facially valid, that her claim should not be for false arrest or false imprisonment, but malicious

prosecution, and that Defendants are immune from liability for malicious prosecution under the California Government Code. Because, Defendants argue, they are immune from liability for malicious prosecution, they are also immune from liability for claims of infliction of emotional distress arising out of that malicious prosecution. *See Scannell v. County of Riverside*, *supra*, 152 Cal.App.3d at 609.

Plaintiff requests leave to amend to allege liability with respect to these causes of action.

Defendants' motion to dismiss these causes of action is GRANTED WITH LEAVE TO AMEND.

6. <u>FIFTH CAUSE OF ACTION FOR NEGLIGENCE PER SE</u>.

Defendants move to dismiss the Fifth Cause of Action for negligence per se.

"'Negligence per se' is an evidentiary doctrine codified at Evidence Code section 669. Under subdivision (a) of this section, the doctrine creates a presumption of negligence if four elements are established: (1) the defendant violated a statute, ordinance, or regulation of a public entity; (2) the violation proximately caused death or injury to person or property; (3) the death or injury resulted from an occurrence the nature of which the statute, ordinance, or regulation was designed to prevent; and (4) the person suffering the death or injury to his person or property was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted." *Quiroz v. Seventh Ave. Center*, 140 Cal.App.4th 1256, 1285 (2006). "[T]he

33

doctrine of negligence per se does not establish tort liability. Rather, it merely codifies the rule that a presumption of negligence arises from the violation of a statute which was enacted to protect a class of persons of which the plaintiff is a member against the type of harm that the plaintiff suffered as a result of the violation." *Id.* "Even if the four requirements of Evidence code section 669, subdivision (a), are satisfied, this alone does not entitle a plaintiff to a presumption of negligence *in the absence of an underlying negligence action.*" *Id.*

Plaintiff responds that she "has properly maintained and pled a cause of action for Negligence Per Se." Alternatively, she requests leave to amend.

There is no cause of action for negligence per se; it is an evidentiary vehicle only. Defendants' motion to dismiss the Fifth Cause of Action is GRANTED WITHOUT LEAVE TO AMEND.

7. <u>SEVENTH CAUSE OF ACTION FOR NEGLIGENCE</u>.

Defendants move to dismiss the Seventh Cause of Action for negligence. The Seventh Cause of Action alleges:

> 75. On August 21, 2007, Defendant CHAVEZ negligently, carelessly and unlawfully caused Plaintiff GARCIA to be arrested. Said Defendant failed to exercise reasonable care in his duties to insure [sic] that the individual was the correct suspect during his investigation of the altercation at Pitman Farms. By failing to ensure [sic] that Plaintiff was the correct individual a bench warrant was issued and Plaintiff was arrested and prosecuted for a crime she did not commit.

> 76. Defendant CITY OF SANGER and SANGER POLICE DEPARTMENT were negligent in the

34

> training of their police officers in that
> they were negligently and improperly trained
> in that they improperly identified an
> innocent individual who was arrested and
> prosecuted for a crime she did not commit.

Defendants move to dismiss the Seventh Cause of Action for negligence on the ground that Defendants did not breach a duty owed to Plaintiff or any statutes applicable to Plaintiff. *See discussion supra*.

Defendants further argue that Plaintiff's allegations that the City of Sanger and the Sanger Police Department were negligent in training fail to state a claim. Defendants argue that Plaintiff has failed to identify an officer who negligently trained Defendant Chavez and that a public entity cannot be held directly liable for negligent training unless the public entity violated a specific statute.

Pursuant to California Government Code § 815, public entities cannot be held directly liable in tort except as specifically provided by statute. *Caldwell v. Montoya*, 10 Cal.4th 972, 980 (1995). Plaintiff's negligent training claim is a form of direct liability, since it does not arise from the public entities' vicarious liability for its employees' torts. *See de Villers v. County of San Diego,* 156 Cal.App.4th 238, 251-255 (2007).[4] No statutory basis exists for such a negligence claim. *Id.; see also Munoz v. City of Union City*, 120 Cal.App.4th 1077, 1110-1115 (2004).

---

[4]Defendants incorrectly cite *de Villers v. County of San Diego* as 31 Cal.4th 1333 (2007).

Defendants' motion to dismiss the Seventh Cause of Action is GRANTED WITH LEAVE TO AMEND.

C. **MOTION TO STRIKE**.

    1. **GOVERNING STANDARDS**.

Rule 12(f) provides in pertinent part that the Court "may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Motions to strike are disfavored and infrequently granted. *Neveu v. City of Fresno,* 392 F.Supp.2d 1159, 1170 (E.D.Cal.2005). A motion to strike should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation. *Id.* The function of a Rule 12(f) motion to strike is to avoid the expenditure of time and money that might arise from litigating spurious issues by dispensing with those issues prior to trial. *Fantasy, Inc. v. Fogerty,* 984 F.2d 1524, 1527 (9th Cir.1993), *rev'd on other grounds,* 510 U.S. 517 (1994).

    2. **PRAYER FOR PUNITIVE DAMAGES**.

Defendants move to strike the prayer for punitive damages against Defendants City of Sanger and Sanger Police Department.

Defendants motion to strike is GRANTED. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981); California Government Code § 818.

<u>CONCLUSION</u>

For the reasons stated:

1. Defendants' motion to dismiss is GRANTED IN PART WITH

36

**LEAVE TO AMEND, GRANTED IN PART WITHOUT LEAVE TO AMEND, AND DENIED IN PART;**

    **2.   Defendants' motion to strike is GRANTED;**

    **3.   Plaintiff shall file a First Amended Complaint reflecting the rulings in this Memorandum Decision within ten (10) court days of the filing date of this Memorandum Decision.**

IT IS SO ORDERED.

**Dated:**    **May 14, 2009**                  **/s/ Oliver W. Wanger**
                                              UNITED STATES DISTRICT JUDGE